SAINT NICHOLAS RUTHENIAN UKRAINIAN GREEK CATHOLIC CHURCH OF ROME, N. Y., Plaintiff, *v.* WILLIAM KAPSHO, as President of the Board of Trustees of Saint Nicholas Ukrainian Orthodox Church of Rome, N. Y., et al., Defendants.

Supreme Court, Oneida County, June 23, 1952.

894

*James C. O'Shea* for plaintiff.

*Robert Arthur* for defendants.

SAMUEL J. HARRIS, Official Referee. Historically the differences involved as between the parties to this action have their roots in times centuries past and in countries of eastern Europe and western Asia and in the difference in religious adherence of the inhabitants of those territories. Masses of those inhabitants adhere to the Greek Catholic Church, a Uniate of the Catholic Church which has its seat in Rome. Other masses adhere to the Orthodox Catholic Church, which Orthodox Church yields allegiance religiously not to the Pope but to one of the Patriarchs, in the instance of the defendants herein, the Patriarch at Constantinople.

Much has been said as to the difference in thoughts in religious adherence as between these two bodies of Catholics. Here there are simply to be noted two points of difference; that those who recognize the authority of the Patriarch so thought of him as their supreme religious head on earth and pay loyal tribute to that fact in the Mass; while those who yield adherence to the Pope at Rome recognize him as their spiritual head on earth and

make a pronouncement to that effect in the Mass. In the administration of temporal affairs of the Greek Catholic Church, control of temporalities and other property is generally in the name or under the control of the religious authorities of the church, while in the Orthodox Church, the property on earth of those churches is under the control of the lay members through the representatives elected by the members of the congregation. These differences are exemplified by the issues now before the court.

The parties to this action, one (the plaintiff) representing the authority in adherence of the Greek Catholic Church, and the other (the defendants) representing the authorities and practices of the Orthodox Catholic Church have come to this court for a determination as to which party, plaintiff or defendants, is entitled to the possession of a piece of church property in the city of Rome, New York.

The action has been laid in ejectment by the plaintiff, and meeting that demand of the plaintiff, the defendants lay claim to possession of the property with the defense of adverse possession, Statute of Limitations and laches on the part of the plaintiff, and make a counterclaim which is in effect a prayer to the court to quiet title to the property. It is within the limits of the type of action here brought and the defenses herein set forth that this court must determine on the merits the issues between the plaintiff and defendants.

The testimony herein shows that for many generations there have come to the United States of America, adherents of the Greek Catholic Church and adherents of the Orthodox Catholic Church who fraternize among themselves not only because of church adherence, but the urges of national descent. More commonly these people are divided into Ruthenian, Ukrainian, Russian and Greek groups, and at some time any one of these groups, perhaps, have intermingled more with their brethren on account of race than on account of sectarian religious adherence. A demonstration of that situation is to be found in various places in New York State, and particularly in the vicinity of Rome, New York, where persons of the nationalities above enumerated have come together to settle in American surroundings and to become American citizens.

Such a group, consisting of persons of Ukrainian descent in the second decade of this century organized themselves into a Ruthenian Ukrainian social organization, and following the urge or need for religious observance, that group, after some of its members had worshipped in the Russian Orthodox Church in

the city of Rome, New York, felt the need in the vicinity of the Greek Catholic Church in the surrounding country so decided in the year 1917 to organize into a religious body "Saint Nicholas Ukrainian Orthodox Church of Rome, N. Y." The date of the certificate of incorporation was October 16, 1917. On the following day they took title to a piece of real property in the city of Rome, New York, possession of which property is now being sought by plaintiff in the action in ejectment. On taking title, the church, then incorporated, gave to the Rome Trust Company, a bond for a portion of the purchase price of $1,600, secured by the mortgage of the corporation on such property. The congregation sought for a pastor as its spiritual head and in making approaches to the proper authorities of the Greek Catholic Church in this country, the trustees and members of the congregation were informed that in order to secure the services of a Greek Catholic priest, it would be necessary for them to reincorporate under the provisions of the then article 5-A (now 5-B) of the Religious Corporations Law of the State, and thus give title, possession and control of the real property of the corporation and its other temporalities to the episcopal authorities of the Greek Catholic Church, whose diocese included Rome, New York. There thus came about the reincorporation of the church association under the then article 5-A of the Religious Corporations Law and the consequent surrender of the original corporation of its temporal property and its control to the episcopal and pastoral authority of the Greek Catholic Church of the diocese.

Under its earlier incorporation, the affairs of the church were administered by a lay body elected by the congregation. This change of control carried with it on the part of the Greek Catholic Church, an obligation to supervise and look after the spiritual welfare of the members of the church and to provide pastoral care for them. This obligation or trust, as it may be called, at first received the attention of the Greek Catholic authorities. As time went on priests were not afforded the congregation except sporadically and finally, about 1927, the episcopal office no longer was able or did not provide the congregation of the church with a pastor. On May 20, 1929, the properly authorized representatives of the Rome, New York, congregation made a request of the then Greek Catholic Bishop Bohden for a pastor, and were informed by the then Bishop Bohden, that he could not furnish them with a pastor and that they could do as they pleased, this being in reply to their suggestion that it would be necessary for them to secure the services and

guidance of an Orthodox Catholic pastor if they could not have that service and guidance by a Greek Catholic pastor. The group who were then (at that date in October, 1929) conducting the affairs of the congregation in the absence of such conduct of such church authorities of the Greek Catholic Church, decided to turn to the Orthodox Catholic church for guidance, and in that decision were followed by the members of the congregation. From that date on the congregation has adhered to the Orthodox Catholic rites and practices, and has had Orthodox Catholic pastors, including the present one, the reverend defendant in this action, who has been there for the last four years past. From 1929 to the time of the trial of this action, the church property in suit, has been in the control physically and looked after financially by a group who have recognized themselves as Orthodox Catholics. The services conducted in the church property have been conducted in the manner and under Orthodox Catholic rites, including the pronouncement in the Mass of the authority of the Patriarch at Constantinople, and the business and financial affairs of the congregation, since 1929, have been conducted by the lay officers elected by the members of the congregation.

This action was commenced early in 1950 and it was referred to me by consent of counsel to hear and determine.

Prior to the commencement of this action, a movement was started by some person or persons, which movement resulted in the presentation of a petition by certain persons who claim to be members of the church, and who are of the Greek Catholic faith, asking that steps be taken to re-establish the " Saint Nicholas Ruthenian Ukrainian Greek Catholic Church " of Rome, N. Y., and to recover all of the church property. The petition bore the statement " that it is understood no signer will be put to any expense ". It bore some forty names of persons who claimed to be interested in the movement, but in the proof before me it developed, first, that the names were obtained by methods best known to those who indulge in what is commonly known as " shoving petitions ", and that some of the names written on the petition were not authorized by the owners of those names. The number who actually joined in the petition were only a small part of those who were interested in the church property in question. The testimony showed that practically all those attending or making use of the church property were those of the Ukrainian tongue and that certain persons of Ukrainian descent, although of the Greek Catholic faith, make confession and take communion and had services of the

other church rites from Orthodox pastors but that the great majority of the persons who form the congregation and who attend services regularly are of the Orthodox Catholic adherence.

From 1929 to the time of the trial of this action the group congregation, as now represented by the defendants, renovated the church, provided it with the necessary fittings and fixtures and conducted its financial affairs and paid off the mortgage given in 1917. In paying off such mortgage, the defendants took an assignment of the same instead of a discharge, and to this assignment plaintiff points as an evidence that defendants did so recognize the right of the plaintiff to the possession of the real property in question. With this viewpoint on the part of the plaintiff I do not agree, because I can readily see that because of the differences that occurred at the time the assignment was taken, such assignment was probably taken to protect the congregation by keeping the mortgage ostensibly alive.

With the foregoing in mind, which foregoing combines the facts as found by me, I now proceed to the conclusion drawn by me from the proof. These conclusions are as follows:

In 1929, the episcopal authorities of the Greek Catholic Church abandoned control of that church and from then on failed to provide the church with supervision and pastoral care. The congregation, now represented by the present defendants, took possession of the real property as an Orthodox Catholic congregation and in doing so and from then on held it publicly in a manner hostile to the title of the plaintiff. Such holding has continued from 1929 to the time of the commencement of this action, and thus covers more than the period of the Statute of Limitations in an action to repossess real property. The claim of the Greek Catholic Church to the temporal property of this congregation is a cloud on the title and such cloud should be quieted.

Originally in 1917, the controlling church authorities of the Greek Catholic Church took title to the property as a trust, the condition being that that authority would continue to provide the congregation at Rome, New York, with a pastor and episcopal and pastoral guidance. By the act of Bishop Bohden, in 1929, it abandoned such trust. On the other hand, the group which formed the Orthodox Catholic congregation in the late 1920's and which is now represented by the defendants, has had possession of this church property in Rome, New York, and has guided its affairs and looked after the spiritual and temporal welfare of the congregation now represented by the defendants.

Because of these conclusions, it is necessary that the court grant judgment dismissing the complaint, declaring possession in the defendants by reason of the laches of the plaintiff and the adverse possession of the defendants, and for quieting any claim of the plaintiff for possession of the real property, which is the subject of this action in ejectment.

This may be regarded as my decision and judgment may be entered accordingly.